IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DAVID GUIFFRÉ and ANN GUIFFRÉ,**
**as Parents and Next Friends of**
**JUSTIN GUIFFRÉ, a minor,**

        Plaintiffs,

vs.                      No. CIV 00-1167 JP/LCS

**JESSE GONZALES, Superintendent,**
**individually and in his official capacity,**
**NETA FIELDS, Principal, Sierra Middle**
**School, individually and in her official capacity,**
**and LAS CRUCES PUBLIC SCHOOLS.**

        Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS**
**AND RECOMMENDED DISPOSITION**

**THIS MATTER** came before the Court upon Defendants' Motion to Enforce Settlement Agreement (Doc. 16), filed November 17, 2000. Chief United States District Judge James A. Parker referred this matter pursuant to 28 U.S.C. § 636 (b)(1)(B). The United States Magistrate Judge, having held a hearing on March 7, 2001, and having considered the Motion, the memoranda submitted by the parties, and the applicable law, finds the Motion to be well-taken and recommends that it be **GRANTED**.

**PROPOSED FINDINGS**

    1.      On August 14, 2000, Plaintiffs filed suit on behalf of their minor son (Justin), seeking injunctive relief and monetary damages under 42 U.S.C. § 1983 for alleged violations of Justin's First and Fourteenth Amendment Constitutional rights and asserting violations of the New Mexico

Constitution. Plaintiff alleged that Defendants denied Justin admission to the Sierra Middle School Magnet Program due to his expressions of opposition to its uniformly dressed policy.

2. On August 15, 2000, the Court issued a Temporary Restraining Order requiring Defendants to allow Justin to enroll in and attend the Magnet Program. Defendants complied. Once the issue of Justin's participation in the program was resolved, the parties entered into settlement negotiations regarding the monetary relief sought in the Complaint.

3. On August 30, 2000, Plaintiffs, through counsel, presented a formal demand "for full and final settlement of this case" in exchange for $500.00 in compensatory damages, a joint press release, and attorney fees and costs in the amount of $12,648.54. (Defs' Ex. 1.) On September 8, 2000, Plaintiffs' counsel informed Plaintiffs that their offer had been accepted. (Attachment C to Plaintiffs' Opposition to Contested Motion to Withdraw as Counsel, filed November 13, 2000.) On September 22, 2000, counsel for Plaintiffs prepared a Settlement Agreement and Release of All Claims in accordance with the agreement. (Defs' Exs. 3 and 4.) The Settlement provided, *inter alia*, that:

> The Guiffrés further agree and acknowledge that this Agreement extends to and includes any and all losses, damages, injuries, and claims, known or unknown, including any that may be discovered in the future or that may arise or accrue in the future, arising out of, or in connection with, the matters alleged in the Lawsuit through the date of execution of this Agreement.

4. On October 17, 2000, Plaintiffs' counsel sent Defendants correspondence abandoning the joint press release portion and proposing minor changes in language that are not at issue herein. (Defs' Ex. 4.) Counsel also stated that the Guiffrés sought to add the following language to the settlement agreement:

> This settlement agreement does not extend to, settle, or waive, any claim or cause of action that the Guiffrés may have based on alleged violations of the First Amendment right to free speech.

Defendants refused to accept this additional provision as it conflicted with the earlier agreement to settle all claims raised in the Complaint.

5.      On November 13, 2000, Plaintiffs' counsel moved to withdraw. After Plaintiffs contested the motion, a hearing was held before the undersigned United States Magistrate Judge on January 3, 2001. At the hearing, Plaintiffs stated that they no longer opposed counsel's withdraw. On January 25, 2001, the District Court issued a Stipulated Order granting counsel's motion to withdraw.

6.      On January 26, 2001, counsel for Defendants received a telephone call from a person identifying himself as Michael Guiffré, an attorney calling on behalf of the Plaintiffs. (Defs' Reply Ex. 3.) The caller proposed that payment of the entire settlement amount ($12,000) be made directly to the Guiffrés and that the Guiffrés would then negotiate with their former attorneys as to the final sum the attorneys would be willing to accept. (*Id*.) The Guiffrés have an older son named Michael, an attorney licensed in the State of New Mexico who resides in Virginia. On January 29, 2001, Michael Guiffré faxed a letter setting out this modification and a copy of the same settlement agreement that had been drafted by Plaintiffs' former counsel on September 22, 2000. ( Defs' Reply Ex. 2; Defs' Exs. 3 and 4.) Defendants declined the proposed revision because Plaintiffs' former attorneys had filed a charging lien and there was no representation that former counsel had consented to the new proposal. (Def. Reply Ex. 3.)

7.      Defendants move to enforce the settlement agreement, arguing that the settlement agreement should be enforced as a matter of public policy, because it was based on mutuality of

consideration, was knowing and voluntary, and Plaintiffs' counsel possessed apparent authority. Plaintiffs respond that Defendants' position does not reflect the actual settlement reached by the parties and that they also move to enforce the agreement of September 6, 2000.

8. Plaintiffs admit that their settlement offer of August 30, 2000 was accepted by September 8, 2000. (Opposition at 3.) However, they contend that the settlement documents drafted on September 22, 2000 do not accurately reflect the terms of the agreement because they provide for dismissal of the First Amendment claim.

9. The district court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir.1993).[1] Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law, *see United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir.2000), even when there are federal causes of action in the underlying litigation. *See United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir.1992). *But see Heuser v. Kephart*, 215 F.3d 1186, 1190 (10th Cir. 2000) (noting divergence of views as to whether federal or state law governs); *Snider v. Circle K Corp.*, 923 F.2d 1404, 1407 (10th Cir.1991) (holding settlement agreements in Title VII cases are governed by federal common law because the agreements and the statute are "inextricably linked"). However, applicable principles of contract law are the same under both federal and New Mexico law. *Heuser v. Kephart*, 215 F.3d at 1190.

10. New Mexico law favors the settlement of disputed claims, *see Gonzales v. Atnip*, 102

---

[1] Where the terms of the agreement are in dispute, an evidentiary hearing is necessary. *See Hardage*, 982 F.2d at 1497. In this case, an evidentiary hearing was duly noticed and held on February 20, 2001.

N.M. 194,195, 692 P.2d 1343, 1344 (Ct. App. 1984) and contracts of settlement will be enforced here in accordance with their terms if there is no ambiguity in the terms of the settlement agreement. *See Montoya v. Villa Linda Mall, Ltd.*, 110 N.M. 128, 129, 793 P.2d 258, 259 (1990). A settlement agreement or release can be challenged if there is a lack of consideration, fraud, misrepresentation, duress, mistake, undue influence, overreaching, or other factors supporting unenforceability. *See Hendren v. Allstate Ins. Co.*, 100 N.M. 506, 508, 672 P.2d 1137, 1139 (Ct. App. 1993). There is a presumption in New Mexico that an attorney who settles a client's claim has the authority to do so, that may be overcome by credible evidence to the contrary. *Navajo Tribe of Indians v. Hanosh Chevrolet Buick, Inc.*, 106 N.M. 705, 749 P.2d 90 (1988).

11.     Plaintiffs' demand of August 30, 2000 was clear and unambiguous. The August 30, 2000 demand was accepted by Defendants and is plainly set out in the Settlement Agreement prepared by Plaintiffs' former counsel on September 22, 2000. Plaintiffs have failed to present any evidence that their attorneys acted without their authority in extending the settlement offer of August 30, 2000 and have thus failed to overcome the presumption that their former attorneys had authority to settle the case. Plaintiffs' assertion that the settlement contemplated the reservation of their First Amendment claim is not credible because the First Amendment claim was central to the case. There was never a dispute that offer of August 30, 2000 provided that the Complaint would be dismissed with prejudice, including the First Amendment claim. Plaintiffs have made no showing of lack of consideration, fraud, misrepresentation, duress, mistake, undue influence, overreaching, or other factors supporting unenforceability and have failed to demonstrate any legal or equitable basis which would warrant their release from their contractual obligations under the Settlement Agreement. Under these circumstances, the Settlement Agreement, as reduced to writing on September 22, 2000, should be enforced.

## RECOMMENDED DISPOSITION

I recommend that Defendants' Motion to Enforce Settlement Agreement (Doc. 16), filed November 17, 2000, be **GRANTED**. Defendants should forward the full amount of the settlement proceeds to Plaintiffs' former counsel. Plaintiffs' former counsel should disburse the funds in accordance with the terms of the September 22, 2000 settlement agreement. Upon filing of a certification by Defendants that the full settlement proceeds have been sent to, and received by, Plaintiffs' former counsel, I further recommend that the Complaint be **DISMISSED WITH PREJUDICE**.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**